RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

TY HALASZ
RICK WATSON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C.  20044
*Tel*. (202) 307-6484 (Halasz)
*Tel*. (202) 353-0300 (Watson)
*Fax*. (202) 307-0054
Ty.Halasz@usdoj.gov
Rickey.Watson@usdoj.gov

*Attorneys for the United States of America*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 2:19-CV-0836-TS-DBP |
| Plaintiff, | ) | |
| | ) | **MOTION FOR** |
| *v.* | ) | **SUMMARY JUDGMENT** |
| | ) | |
| BRYAN KEITH HAWKER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## TABLE OF CONTENTS

I.     Statement of Undisputed Material Facts  ...................................................... 1

II.    Evidentiary Matters  ................................................................................ 5

III.   Legal Standard  ..................................................................................... 6

IV.    Argument  .......................................................................................... 7

     A.     The FBAR Generally  ...................................................................... 7

     B.     Heightened Penalties for Willfulness ................................................ 9

     C.     Mr. Hawker Willfully Failed to Disclose the Foreign Account ..... 12

     D.     The Penalty Amount is Not an Abuse of Discretion ...................... 15

V.     Conclusion  ....................................................................................... 16

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Liberty Lobby Inc.*,
477 U.S. 242 (1986)................................................................. 6

*Bacchus Indus. Inc. v. Arvin Indus. Inc.*,
939 F.2d 887 (10th Cir. 1991) ............................................. 7

*Bedrosian v. United States*,
912 F.3d 144 (3d Cir. 2018) ............................................... 10

*Bedrosian v. United States*,
2017 WL 3887520 (E.D. Pa. Sept. 9, 2017)...................... 8

*Garrett v. Hewlett Packard Co.*,
305 F.3d 1210 (10th Cir. 2002) .......................................... 6

*Greer v. Comm'r*,
101 Fed. Cl. 122 (2011) ..................................................... 11

*Jenkins v. United States*,
496 U.S. 384 (1990)............................................................ 11

*Lefcourt v. United States*,
125 F.3d 79 (2d Cir. 1997) .......................................... 10, 12

*Perry v. Woodward*,
199 F.3d 1126 (10th Cir. 1999) ........................................... 7

*Raiser v. Utah Cty.*,
409 F.3d 1243 (10th Cir. 2005) ...................................... 5, 6

*Safeco Ins. Co. v. Burr*,
551 U.S. 47 (2007)............................................................... 9

*United States v. Bohanec*,
263 F. Supp. 3d 881 (C.D. Cal. 2016) .............................. 10

*United States v. Garrity*,
    304 F. Supp. 3d 267 (D. Conn. 2018) ................................................................. 10

*United States v. Horowitz*,
    361 F. Supp. 3d 511 (D. Md. 2019) ................................................................... 10

*United States v. Ill. Cen. R. Co.*,
    303 U.S. 239 (1938) ............................................................................................. 9

*United States v. McBride*,
    908 F. Supp. 2d 1186 (D. Utah 2012) ..................................... 8, 9, 10, 11, 12, 13

*United States v. Williams*,
    489 F. App'x 655 (4th Cir. 2012) ............................................................... 10, 11

*United States v. Zwerner*,
    2014 WL 11878430 (S.D. Fla. Apr. 29, 2014) ................................................. 10

*White v. York Int'l Corp.*,
    45 F.3d 357 (10th Cir. 1995) ............................................................................. 6

**Federal Statutes**

5 U.S.C. § 706 ........................................................................................................ 16

31 U.S.C. § 3711 .................................................................................................... 15
31 U.S.C. § 3717 .................................................................................................... 15
31 U.S.C. § 5314 ...................................................................................................... 7
31 U.S.C. § 5321 ........................................................................................... 8, 15, 16

Bank Secrecy Act,
    Pub. L. No. 91-508, 84 Stat. 1114 (1970) ......................................................... 7

**Federal Regulations**

31 C.F.R. § 1010.306 ......................................................................................... 8, 12
31 C.F.R. § 1010.350 ......................................................................................... 7, 12
31 C.F.R. § 1010.810 ............................................................................................. 8
31 C.F.R. § 1010.820 ........................................................................................... 16

## Other Federal Authorities

Fed. R. Civ. P. 36 ................................................................................ 5, 6

Fed. R. Civ. P. 56 ................................................................................. 6

H.R. Rep. No. 91-975 (1970) ............................................................... 7

I.R.M. § 4.24.1.2 .................................................................................. 8

The United States hereby moves for the entry of summary judgment against Defendant Bryan Hawker.  Specifically, the United States requests that the Court find, as a matter of law, that Mr. Hawker's failure to file a Form TD F 90-22.1 (FBAR) for 2012 was willful.

In 2012, a year in which Mr. Hawker reported a total income of $480, Mr. Hawker opened a securities account in the Cayman Islands under the name of BK Consulting Inc., an entity he controls.  He seeded the account with 7,000,000 shares of stock and proceeded to sell some here and there, having the cash wired to his wife.  Though the circumstances under which the account came to be empty are unclear, it is clear that Mr. Hawker knew that he was up to something dubious.  He failed to file an FBAR detailing the account and doctored evidence to make it seem like he was clueless.  He has admitted to every key aspect of this case, either expressly or implicitly.  Summary judgment is appropriate.

## I.  STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Defendant Bryan Keith Hawker is a United States citizen.  *See* Answer, Doc. 7 ¶ 42; Req. for Admis. (RFA) No. 1, Ex. A, Doc. 11-2 at 3.

2.      Mr. Hawker had a financial interest in a foreign investment account with an account number ending in 94 with Seven Mile Securities (the Account)

during the calendar year 2012.  *See* Answer, Doc. 7 ¶ 9; RFA Nos. 2–4, Doc. 11-2 at 3; FBAR Tr. (Transcript), Ex. B, Doc. 11-3 at 1–3.

3.     The Account was opened with Seven Mile Securities in either late July or August 2012 by Mr. Hawker under the name BK Consulting Inc.  *See* Answer, Doc. 7 ¶ 19; RFA Nos. 5–7, Doc. 11-2 at 4; Acct. Stmt. (Statement), Ex. C, Doc. 11-4 at 2.

4.     At the time, Mr. Hawker was the sole shareholder of BK Consulting Inc.  *See* RFA No. 5, Doc. 11-2 at 4.

5.     The Account held 7,000,000 shares of Zippy Bags Inc. stock.  *See* RFA No. 8, Doc. 11-2 at 4; Statement, Doc. 11-4 at 2.

6.     During a portion of 2012, the aggregate amount in the Account exceeded $10,000 in U.S. currency.  *See* Answer, Doc. 7 ¶ 10; RFA No. 10, Doc. 11-2 at 4; Statement, Doc. 11-4 at 2.

7.     Both Seven Mile Securities and the Account were located in the Cayman Islands.  *See* Answer, Doc. 7 ¶ 44; RFA No. 3, Doc. 11-2 at 3.

8.     On or around August 9, 2012, at Mr. Hawker's direction, Seven Mile Securities sold 47,689 shares of Zippy Bags Inc. stock at $0.3813 per share and wired proceeds of $17,600 to Mr. Hawker's wife at the time, Pauline J. Carson

a/k/a Hawker. *See* Answer, Doc. 7 ¶ 22; RFA Nos. 14–15, 17, Doc. 11-2 at 4–5;

Statement, Doc. 11-4 at 2; Emails, Ex. D, Doc. 11-5 at 3–5.

9.  On August 17, 2012, at Mr. Hawker's direction, an additional 200,000

shares of Zippy Bags Inc. stock were sold and proceeds of $42,600 were remitted

to Ms. Carson. *See* Answer, Doc. 7 ¶ 23; RFA Nos. 20–21, Doc. 11-2 at 5;

Statement, Doc. 11-4 at 2.

10.  On August 21, 2012, at Mr. Hawker's direction, Ms. Carson requested

the Account's balance because the Hawkers wanted to know what was available.

*See* Answer, Doc. 7 ¶ 29; RFA No. 18, Doc. 11-2 at 5; Emails, Doc. 11-5 at 2.

11.  On September 4, 2012, approximately 4,500,000 shares of Zippy Bags

Inc. stock were transferred out of the Account, but 2,225,000 of these shares were

transferred back into the Account on September 11, 2012. *See* Statement, Doc. 11-

4 at 2.

12.  On January 15, 2013, all of the remaining Zippy Bags Inc. stock —

4,472,140 shares at that point — was transferred out of the Account. *See*

Statement, Doc. 11-4 at 2.

13.  During August 2012, Mr. Hawker regularly communicated with

Seven Mile Securities through Ms. Carson. *See* Answer, Doc. 7 ¶ 29; RFA No. 15,

18–19, 21, Doc. 11-2 at 5; Emails, Doc. 11-5 at 2–5.

14.     Before the IRS Office of Appeals in 2018, Mr. Hawker submitted copies of emails between the Hawkers and Seven Mile Securities that the IRS had previously obtained, but Mr. Hawker had falsified the content of those emails.  *See* RFA No. 22, Doc. 11-2 at 5; Fake Emails, Ex. E, Doc. 11-6 at 2–3.

15.     During an interview with the IRS on February 10, 2014, Mr. Hawker's accountant instructed him not to answer any questions about BK Consulting Inc.  *See* Zielke Decl., Ex. 2, Doc. 11-9 ¶ 2.

16.     During another interview with the IRS on September 15, 2015, Mr. Hawker said he was responsible for setting up the Account and that the Account was his despite Ms. Carson's involvement.  *See* Zielke Decl., Doc. 11-9 ¶ 3.

17.     In the 2015 interview, Mr. Hawker admitted to intentionally avoiding the foreign account questions asked by the IRS in the 2014 interview.  *See* Zielke Decl., Doc. 11-9 ¶ 3.

18.     Mr. Hawker's Form 1040 for tax year 2012 lists a total income of $480.  *See* 2012 Return, Ex. F, Doc. 11-7 at 2.

19.     The 2012 tax return for BK Consulting Inc. did not include income from the sale of Zippy Bags Inc. stock in August 2012.  *See* Adjustments, Ex. G, Doc. 11-8 at 2.

20.     Such income was revealed during the IRS's examination.  *See* Adjustments, Doc. 11-8 at 2.

21.     Mr. Hawker failed to file an FBAR for 2012 by June 30, 2013.  *See* RFA No. 11, Doc. 11-2 at 4; Transcript, Doc. 11-3 at 1.

22.     Mr. Hawker did not file an FBAR for 2012 until September 16, 2015. *See* Answer, Doc. 7 ¶¶ 8, 11, 12; Transcript, Doc. 11-3 at 1.

23.     In the FBAR filed on September 16, 2015, Mr. Hawker admitted he had an interest in the Account.  *See* Transcript, Doc. 11-3 at 1–3.

24.     Mr. Hawker willfully failed to file an FBAR for 2012 by June 30, 2013.  *See* RFA No. 12, Doc. 11-2 at 4.

## II.  EVIDENTIARY MATTERS

Federal Rule of Civil Procedure 36 provides that a "party may serve upon any other party a request to admit, for purposes of the pending action only, the truth of any [relevant] matters" relating to facts or legal application to the facts of the case.  Fed. R. Civ. P. 36(a).  "If the receiving party fails to respond to the request within 30 days, or within such other time as the court may allow, the matter is deemed admitted."  *Raiser v. Utah Cty*., 409 F.3d 1243, 1246 (10th Cir. 2005). "Once a matter is admitted, it is conclusively established unless the court on motion permits withdrawal or amendment of the admission."  *Id*. (quoting Fed. R.

Civ. P. 36(b)).  The United States sent its Requests for Admission to Mr. Hawker

on June 10, 2020.  Ex. A, Doc. 11-2.  The 30-day deadline to respond to those

requests was July 10, 2020.  Mr. Hawker has never responded to any

correspondence sent by the United States, including these requests.  Halasz Decl.,

Ex. 1, Doc. 11-1 ¶ 3.  The United States is entitled to rely on the requests as

admitted under Rule 36 and Tenth Circuit precedent.  *See* Fed. R. Civ. P. 36(a)(3),

(b); *Raiser*, 409 F.3d at 1246.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits the entry of a judgment when no

trial is necessary.  *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary judgment is authorized when there is no genuine dispute as to any

material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A genuine factual dispute exists where the evidence presented is so

contradictory that judgment could enter for either party at trial.  *See Anderson v.

Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  In evaluating the motion, the Court

views all evidence in the light most favorable to the nonmovant.  *See Garrett v.

Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant

must establish every element of its claim or defense by sufficient, competent

evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its

burden, to avoid summary judgment the responding party must present sufficient,

competent, contradictory evidence to establish a genuine factual dispute.  *See*

*Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry*

*v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).

## IV.   ARGUMENT

### A.   The FBAR Generally

In the Bank Secrecy Act, Pub. L. No. 91-508, 84 Stat. 1114 (1970),

Congress confronted the "serious and widespread use" of "foreign financial

facilities located in" jurisdictions that provided secrecy to account holders for the

"purpose of violating American law".  H.R. Rep. No. 91-975 (1970), *reprinted in*

1970 U.S.C.C.A.N. 4394, 4397.  To combat the use of such secret accounts,

Congress authorizes the Secretary of the Treasury to require a person to keep

records and file reports when that person maintains relations with a foreign

financial agency.  31 U.S.C. § 5314(a).  Under the statute's implementing

regulations, each "United States person having a financial interest in, or signature

authority over, a bank, securities, or other financial account in a foreign country

shall report such relationship" to the IRS for each year in which such relationship

exists.  31 C.F.R. § 1010.350(a).  That report is on Form TD F 90-22.1, Report of

Financial Bank and Financial Accounts, commonly known as an "FBAR". The FBAR is not a tax form and it is not filed with a tax return. For 2012, the FBAR was due to be filed by June 30, 2013. *See* 31 C.F.R. § 1010.306(c).

Congress has also given the Secretary of the Treasury the authority to impose "a civil money penalty on any person" who fails to file a required FBAR. 31 U.S.C. § 5321(a)(5)(A). For willful violations, the maximum penalty is the greater of $100,000 or 50 percent of "the balance in the account at the time of the violation." 31 U.S.C. § 5321(a)(5)(C), (D)(ii). The Financial Crimes Enforcement Network (FinCEN), a bureau of the Department of the Treasury, has overall "authority for enforcement and compliance" of the FBAR requirement. 31 C.F.R. § 1010.810(a). FinCEN has, however, delegated "examination and penalty authority" concerning the FBAR to the Internal Revenue Service. I.R.M. § 4.24.1.2(1)(D) (Apr. 5, 2011).

Courts examining FBAR penalties have consistently found that the proper legal standard for determining whether the IRS's assessment of the penalty was proper is de novo. *See, e.g.*, *United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012). Even as to willfulness, evidence about the IRS's administrative determination is irrelevant at this stage. *See Bedrosian v. United States*, No. 15-CV-5853, 2017 WL 3887520 at *1–3 (E.D. Pa. Sept. 9, 2017). The burden of

proof for the United States to establish willfulness is by a preponderance of the evidence.  *McBride*, 908 F. Supp. 2d at 1201.

To prevail, the United States must prove that (1) Mr. Hawker was a citizen of the United States, a resident, or a person doing business in the United States during 2012; (2) Mr. Hawker had a financial interest in a bank, securities, or other financial account during 2012; (3) the account had a balance that exceeded $10,000 during 2012; (4) the account was in a foreign country; (5) Mr. Hawker failed to timely disclose the account; and (6) the failure to report the account was willful; and (7) the amount of the penalties was proper.  *McBride*, 908 F. Supp. 2d at 1201.

## B.  Heightened Penalties for Willfulness

Although Congress provided heightened penalties for willful failures to file an FBAR, it did not define the term *willful* in this context.  The Supreme Court, however, has made clear that "where willfulness is a statutory condition of civil liability," the term covers "not only knowing violations of a standard, but reckless ones as well."  *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57 (2007); *see also United States v. Ill. Cen. R. Co*., 303 U.S. 239, 242–43 (1938) ("willfully" includes "conduct marked by careless disregard whether or not one has the right to so act").  Willfulness includes all conduct that is voluntary, but not conduct that is merely accidental or unconscious.  *McBride*, 908 F. Supp. 2d at 1205.

Thus, reckless disregard of a statutory duty satisfies the willfulness standard and is sufficient to impose heightened FBAR penalties. *See Bedrosian v. United States*, 912 F.3d 144, 152–53 (3d Cir. 2018); *United States v. Williams*, 489 F. App'x 655, 659 (4th Cir. 2012); *United States v. Horowitz*, 361 F. Supp. 3d 511, 527–28 (D. Md. 2019); *United States v. Garrity*, 304 F. Supp. 3d 267, 273–74 (D. Conn. 2018); *United States v. Bohanec*, 263 F. Supp. 3d 881, 888–89 (C.D. Cal. 2016); *McBride*, 908 F. Supp. 2d at 1204–05.  The relevant inquiry is whether the failure to disclose information was purposeful instead of inadvertent, not whether the taxpayer subjectively believed he was not required to file an FBAR.  *See Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997); *McBride*, 908 F. Supp. 2d at 1210 (finding that if subjective intent were required, every person would escape liability by avoiding learning about the reporting requirements).  Drawing on circumstantial evidence and reasonable inferences is often necessary "because direct proof of the [violator]'s intent is rarely available."  *United States v. Zwerner*, No. 13-CV-22082, 2014 WL 11878430 at *3 (S.D. Fla. Apr. 29, 2014).

A taxpayer is therefore liable for the enhanced penalty if he "made a conscious effort to avoid learning about reporting requirements", *Williams*, 489 F. App'x at 659, or if he "ought to have known" that "there was a grave risk that the filing requirement was not being met", *Bedrosian*, 912 F.3d at 153.  The United

States need not show "an improper motive or bad purpose" to sustain a willful FBAR penalty. *McBride*, 908 F. Supp. 2d at 1204. Rather, reckless disregard occurs when "the facts and circumstances of a particular case, taken as a whole, demonstrate that the taxpayer knew or should have known that there was a risk [of noncompliance] and failed to take available corrective action, with the result being the violation of the law." *Id.* at 1209 (quoting *Jenkins v. United States*, 101 Fed. Cl. 122, 134 (2011)).

As a matter of law, all taxpayers who sign and file a federal income tax return know or should know about the requirement to file an FBAR. "It is well established that taxpayers are charged with the knowledge, awareness, and responsibility for their tax returns, signed under penalties of perjury, and submitted to the IRS." *McBride*, 908 F. Supp. 2d at 1206 (collecting cases). Courts have long held that "individuals are charged with knowledge of the contents of the documents they sign — that is, they have constructive knowledge of these documents." *Id.* As a corollary to this notion, a "taxpayer who signs a tax return will not be heard to claim innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents." *Williams*, 489 F. App'x at 659 (quoting *Greer v. Comm'r*, 595 F.3d 338, 347 n.4 (6th Cir. 2010)).

Thus, the act of signing the return puts a taxpayer on notice of the contents of the entire return, as it would for any other document.

In *McBride*, this Court found that the taxpayer's failure to file an FBAR was voluntary and not accidental. 908 F. Supp. 2d at 1213. The Court reasoned that the taxpayer had signed his tax returns, which provided him with constructive knowledge of his duty to file the FBAR. *Id*. But the taxpayer chose not to disclose his interests in foreign accounts. *Id*. The fact that the taxpayer had a mistaken belief that he did not need to disclose his foreign accounts was irrelevant. *Id*. (quoting *Lefcourt*, 125 F.3d at 83). All that mattered was "whether the law required its disclosure" and whether he voluntarily failed to comply. *Id*.

## C.  Mr. Hawker Willfully Failed to Disclose the Foreign Account

The basic facts of this case are mundane and should not be in dispute. Mr. Hawker is a United States citizen. Fact No. 1. In August 2012, Mr. Hawker opened the Account with Seven Mile Securities under the name of BK Consulting Inc., an entity for which he was the sole shareholder. Fact Nos. 2–4. He placed 7,000,000 shares of Zippy Bags Inc. stock in the Account. Fact No. 5. This interest is a financial interest within the meaning of 31 C.F.R. § 1010.350(e)(2)(ii). During 2012, the aggregate value of the Account exceeded $10,000. Fact. No. 6. The Account was located in the Cayman Islands. Fact. No. 7. And Mr. Hawker

failed to file an FBAR when required by law — by June 30, 2013.  Fact Nos. 21–22; *see* 31 C.F.R. § 1010.306(c).

Rather, this case comes down to willfulness.  Evidence shows that Mr. Hawker knew of the Account at the time, as he was the one who opened it.  Fact Nos. 2–4.  Mr. Hawker made decisions relating to the Account and ordered transactions with securities in the Account.  Fact Nos. 8–9.  He made inquiries about the Account.  Fact No. 10.  He regularly directed email correspondence about the Account.  Fact No. 13.  It bears emphasizing that the amount of the two transactions Mr. Hawker directed ($60,200) is more than 125 times the amount he reported as total income on his 2012 Form 1040.  Fact No. 18.  Importantly, Mr. Hawker did not include the $60,200 proceeds as income for BK Consulting Inc. either; the income had to be revealed by examination.  Fact Nos. 19–20.  Mr. Hawker is not hapless or clueless — he sought out a foreign broker, opened an account, and actively managed its contents.

The only argument Mr. Hawker has is that he did not know about the FBAR requirement.  But taxpayers are charged with knowing what is required of them — ignorance of these requirements is not a valid defense.  *See McBride*, 908 F. Supp. 2d at 1206.  Given the chance to cooperate, Mr. Hawker chose to obfuscate his relationship to the Account by refusing to answer any questions related to BK

13

Consulting Inc., its stock ownership, or foreign accounts, Fact No. 15, only to later provide that information, Fact. No. 16.  He admitted to intentionally avoiding those questions.  Fact. No. 17.

And even after Mr. Hawker filed a delinquent FBAR, he still doctored emails, apparently unaware that the IRS already had copies of the emails.  Fact No. 14.  Both sets of emails have identical timestamps and the same appearance, but the content of the emails is entirely different.  *Compare* Emails, Doc. 11-5 at 2–3, *with* Fake Emails, Doc. 11-6 at 2–3.  Mr. Hawker falsified the emails he submitted to the IRS to make it appear as if neither he nor Ms. Carson were aware of or authorized the Account's opening and as if he and Ms. Carson were generally bewildered by their connection to the Account.  Fact No. 14; *see* Fake Emails, Doc. 11-6 at 2–3.

In sum, Mr. Hawker failed to file a timely FBAR.  Fact Nos. 21–22.  When he failed to timely file, he knew he had an interest in the Account, knew he was subject to U.S. tax, consistently acted to keep the Account secret from the IRS, lied about the Account when questioned, and altered documents to make it appear like he was clueless.  Taken together, this evidence shows, at a minimum, that Mr. Hawker acted recklessly with regard to the possibility that he might have to disclose his interest in the Account.  He knew full well that he had an interest in a

foreign account, that the account contained substantial assets, and that the sale of those assets would have tax consequences somewhere, either for himself or the entity he controlled.  His actions strongly imply an active intent to conceal information from the IRS.  There can be no question that Mr. Hawker willfully failed to file a timely FBAR for 2012.  Fact No. 24.

### D.   The Penalty Amount is Not an Abuse of Discretion

The FBAR statutory scheme gives the Secretary of the Treasury broad discretion to choose the assessment amount, merely stating that a willful FBAR penalty "shall be increased to the greater of $100,000 or 50 percent of the amount" in the account.  31 U.S.C. § 5321(a)(5)(C).  Once the penalty is assessed, the United States may take steps to try to collect it.  *See* 31 U.S.C. § 3711(a)(1), (g)(1).  Interest begins to accrue after assessment.  *See* 31 U.S.C. § 3717(a).  Other penalties accrue if the penalty is not timely paid.  *See* 31 U.S.C. § 3717(e).  Possible collection actions include administrative offsets, tax refund offsets, and wage garnishment.  *See* 31 U.S.C. § 3711(g)(9).  The assessment also starts a two-year period in which the United States may file suit to obtain a judgment.  *See* 31 U.S.C. § 5321(b)(2).  Because of the wide latitude allowed by the statute and the distinction the statute draws between assessment of the penalty and a lawsuit to recover it, it is clear that Congress intended the assessment of the penalty to be an

15

administrative action.  Because the Secretary has discretion to set the penalty amount, the Court reviews the assessment to determine whether the amount is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Here, the penalty is $100,000, which is plainly authorized by both statute and regulation.  *See* 31 U.S.C. § 5321(a)(5)(C); 31 C.F.R. § 1010.820(g).  The penalty is therefore in accordance with law, is not arbitrary or capricious, and does not constitute an abuse of discretion.

## V.  CONCLUSION

Based on the foregoing argument, the United States is entitled to summary judgment that Mr. Hawker's failure to file a timely FBAR for 2012 was willful, and that he is subject to the assessed penalty plus all statutory additions and accruals, less payments and credits.

//

//

//

16

Respectfully submitted this 14th day of September, 2020.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney
General

*/s/ Ty Halasz*
TY HALASZ
RICK WATSON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C.  20044
*Tel*. (202) 307-6484 (Halasz)
*Tel*. (202) 353-0300 (Watson)
*Fax.* (202) 307-0054
Ty.Halasz@usdoj.gov
Rickey.Watson@usdoj.gov

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2020, I filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will provide electronic notice

to counsel for all parties that have appeared in this action.  In addition, I sent the

foregoing via U.S. mail to the following parties who have yet to enter an

appearance in this action:

BRYAN KEITH HAWKER
8928 S. Black Pine Street
West Jordan, UT 84088

/s/ Ty Halasz
TY HALASZ
Trial Attorney, Tax Division
U.S. Department of Justice